The undersigned in their discretion have reviewed the prior Opinion and Award based upon the record of the proceedings before the deputy commissioner. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award except to modify compensation for medical treatment to conform to the findings of fact and some other technical modifications.
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties at the hearing as
STIPULATIONS
1. At the time of the injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At that time, an employment relationship existed between plaintiff and defendant-employer.
3. On October 20, 1993, plaintiff suffered an injury by accident arising out of and in the course of his employment with defendant-employer.
4. Nationwide Mutual Insurance Company was the compensation carrier on the risk.
5. The medical records concerning plaintiff from University of North Carolina Hospitals and from Wanda Neville, D.C. are stipulated into evidence.
6. A time card from Triangle Webb Printing Company is stipulated into evidence.
7. An Industrial Commission Form 22 completed by defendant-employer is admitted into evidence. The Form 22 reflects that plaintiff's average weekly wage on the date of his injury was $253.65, which yields a compensation rate of $169.11.
8. Plaintiff's counsel's letter of August 29, 1994 and accompanying pay stubs of Village Printing are admitted into evidence.
* * * * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the deputy commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing the plaintiff was a 32 year old male who had worked primarily in construction. On October 20, 1993, plaintiff had been working for defendant-employer for approximately three weeks, as a masonry worker.
2. Plaintiff's injury by accident occurred when a roof upon which he was standing gave way, causing plaintiff to fall to the ground and to strike the left side of his abdomen. Thereafter, plaintiff immediately sought medical care at University of North Carolina Hospitals where laboratory and other diagnostic studies were performed. At that time, plaintiff was directed to follow up at University of North Carolina Hospitals for further evaluation. Thereafter, on October 21, 1993, plaintiff was re-examined at University of North Carolina Hospitals where he was diagnosed as suffering from a renal contusion with microscopic hematuria and with neck tenderness secondary to the fall.
3. On October 28, 1993, plaintiff was re-evaluated at University of North Carolina Hospitals' emergency room where he was diagnosed as suffering from diffuse myalgia, and conservative treatment was recommended. At no time during October 1993 did any of the physicians at University of North Carolina Hospitals authorize plaintiff to be out of work or indicate any other disability.
4. Prior to October 31, 1993, plaintiff returned to work for Village Companies as a print machine operator, where he worked for several hours. Thereafter, on October 31, 1993, plaintiff went to work for Triangle Webb Printing Company, where he was employed as a print machine operator until November 5, 1993. Plaintiff's hours at Triangle Webb Printing Company during that six-day period ranged between approximately two to ten hours per day. Subsequently, plaintiff returned to work for Village Companies until at least December 19, 1993, where he worked for at least 151 hours and earned at least $881.32. There is no indication in plaintiff's medical records that his alleged inability to continue working at those employers was caused by the October 20, 1993 injury or that his stated complaints from working at those employers were treated by any of his medical care providers.
5. Plaintiff again sought treatment at University of North Carolina Hospitals on January 31, 1994, and reported left anterior and flank pain of a seven to ten day duration which was sharp in nature. Diagnostic testing performed at that time failed to reveal any intra-abdominal process to account for plaintiff's pain and, consequently, plaintiff was prescribed a limited number of narcotics and was diagnosed as suffering from musculoskeletal left flank pain secondary to the October 20, 1993 injury. Again, there is no indication that plaintiff was authorized to be out of work following the January 31, 1994 emergency room visit.
6. On February 2, 1994, plaintiff referred himself to Wanda Neville, chiropractor, who had previously treated plaintiff for complaints of spinal pain which were caused by an automotive accident which occurred in November 1992. Although Dr. Neville indicated that plaintiff was unable to work from October 18, 1993 through April 7, 1994, Dr. Neville's opinions are neither competent nor credible, since Dr. Neville did not begin treating plaintiff for his October 20, 1993 injuries until February 2, 1994. Further, when plaintiff completed a questionnaire early in February 1994, at the request of Dr. Neville, he exaggerated his symptoms on that questionnaire. Plaintiff's contention that the pain medication he was taking affected his ability to accurately answer the questions posed on the questionnaire is not accepted as credible.
7. On February 22, 1994, plaintiff returned to University of North Carolina Hospitals' emergency room for treatment of a problem unrelated to his October 20, 1993 injury. During that visit, plaintiff neither made mention to his treating physician of his workers' compensation injury nor of its resulting symptoms.
8. On April 7, 1994, plaintiff was discharged from Dr. Neville's care and, on the following day, plaintiff was re-examined at University of North Carolina Hospitals' emergency room. At that time, plaintiff was complaining of increased neck pain, although he denied any paresthesias or weakness in the upper extremities. Consequently, plaintiff was diagnosed as suffering from musculoskeletal cervical strain and, again, there was no indication by the emergency room physician that plaintiff was unable to work at that time.
9. On April 21, 1994, plaintiff was again examined at University of North Carolina Hospitals' emergency room with complaints of upper right shoulder symptoms and lower right back pain radiating to the left. There was no indication by the emergency room physician that plaintiff was unable to work at that time and, on May 10, 1994, plaintiff went to work as a framer for Kenny Harris. Thereafter, plaintiff has attempted to start up his own painting and tiling business.
10. On May 19, 1994, plaintiff was last examined at University of North Carolina Hospitals' emergency room and complained of occasional neck pain, occasional lower left quadrant abdominal pain, and groin pain. Again, there was no indication by the treating physician that plaintiff was authorized to be out of work following that visit.
11. On the day of plaintiff's October 20, 1993 injury, plaintiff was paid $300.00 by defendant-employer in consideration of an anticipated convalescence period. Since leaving his employment with defendant-employer, plaintiff has not conducted any substantial job-seeking activities. Moreover, plaintiff has never contacted defendant-employer in an effort to return to work.
* * * * * * * * * * * * * *
Based upon the foregoing and findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On October 20, 1993, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. GEN. STAT. § 97-2 (6).
2. Plaintiff did not satisfy his burden of showing that he was disabled as a consequence of the October 20, 1993 injury and, therefore, his claim for temporary total or other disability compensation is not compensable under the provisions of the Workers' Compensation Act. Click v. Pilot Freight Carriers, Inc.,300 N.C. 164 (1980). N.C. GEN. STAT. § 97-29.
3. Plaintiff's testimony at the hearing is not accepted as credible, based upon the deputy commissioner's observation of plaintiff's demeanor at the hearing, the inconsistencies between his testimony and the stipulated medical records, and the stipulated records of plaintiff's subsequent employment. Further, plaintiff's witnesses' testimony failed to support plaintiff's allegations of disability.
4. The medical treatment plaintiff received from University of North Carolina Hospitals from October 20, 1993 through May 19, 1994, with the exception of the February 22, 1994 treatment was necessary to effect a cure or give relief of his symptoms.
* * * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following
AWARD
1. Under the law, plaintiff's claim for temporary total disability benefits must be, and the same is hereby DENIED.
2. Defendants shall pay plaintiff's medical expenses that were incurred at University of North Carolina Hospitals' emergency room from October 20, 1993 through May 19, 1994 (except for the February 22, 1994 treatment) when bills for the same have been submitted to defendant and approved through procedures adopted by the Industrial Commission.
3. Defendants shall pay the costs.
 S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _____________ COY M. VANCE COMMISSIONER
DISSENTING:
S/ _____________ JOHN A. HEDRICK DEPUTY COMMISSIONER
BSB:be